Mary Wilderman, Exc'x of John Wilderman, *vs.* The Mayor & City Council of Balti-more.

A devise to the city of Baltimore, in trust, "for the relief and support of the indigent and necessitous poor persons who may, from time to time, reside within the limits, as now known, of the twelfth ward of said city of Baltimore," is void as being too vague and indefinite, and the property vests in the next of kin of the testator, or his residuary devisees.

The right of the residuary devisees vested *immediately* upon the death of the testator, and it is not in the power of the legislature, by the subsequent act of 1842, ch. 86, to divest the vested rights acquired under the will, by giving that act a *retrospective* operation.

Appeal from the Court of Common Pleas for Baltimore city.

*Covenant* by the appellees against the appellant to recover arrears of ground-rent due under a lease for ninety-nine years, renewable forever, executed by Henry Peters to John Wilderman; the rent reserved thereby having been devised by said Peters to the plaintiffs. Plea, *nil debet.*

The case was submitted to the court below upon an agreed statement of facts. The question presented is, as to the validity of the following devise in the will of Henry Peters, executed on the 26th of December 1836, and admitted to probate on the 20th of February 1838. The testator, after enumerating certain annuities, says: "I give, devise and bequeath to the Mayor and City Council of Baltimore and their assigns, in trust and special confidence that the said annuities, amounting aggregately to the said sum of one hundred and five dollars

and fifty cents, shall annually forever hereafter be distributed, appropriated and applied, under the direction of said corporation, to the relief and support of the indigent and necessitous poor persons who may, from time to time, reside within the limits, as now known, of the twelfth ward of the said city of Baltimore.'' The plaintiffs claimed and demanded the arrears of rent sued for in this case under this devise, but the defendant refused to pay the same by reason of notice from the residuary devisees of said Peters that they claimed the same, and that the aforesaid devise is null and void. It was also agreed that a *pro forma* judgment should be rendered in favor of the plaintiffs from which the defendant should appeal, and this was accordingly done.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

*William F. Frick* for the appellant.

The validity of this devise can hardly be deemed an open question in this State after the decisions of this court in the cases of *Trippe vs. Frazier,* 4 *H. & J.,* 446. *Dashiell vs. The Attorney General,* 5 *H. & J.,* 392, and the same case in 6 *H. & J.,* 1.

1. It is well settled, (5 *H. & J.,* 401, 402,) that the *Statute of* 43 *Elizabeth* is not in force in Maryland. The devise can therefore receive no aid from the provisions of that statute, or of any of the numerous adjudications upon it in England, and the other States of this Union.

In any point of view the devise is void *at law*, and could only be made good by the intervention of a court of equity. But independent of the *Statute of* 43 *Elizabeth*, there is no jurisdiction in chancery to set up a charity, which is so vague and indefinite in its provisions, that the *cestui que trusts* can only be designated by the exercise of an arbitrary discretion in the trustee. The doctrine of *Cy Pres* has never been adopted in this country, even in those States in which the *Statute of* 43 *Elizabeth* has been either directly re-enacted, or forms, in its spirit, part of their common law.

The Supreme Court of the United States, in the case of the *Baptist Association vs. Hart's Ex'rs*, 4 *Wheat.*, 1, held, that the *entire* jurisdiction of the chancery court over charitable uses grew out of the *Statute of* 43 *Elizabeth.* Whatever doubts may have since arisen about the correctness of this opinion, it is still clear, on all the authorities, that "*a court of chancery in this country, independently of the Statute of Elizabeth, cannot support a devise to charitable uses where no legal interest is vested, on account of the two vague description of those who are to take.*"

This state of things presents an inherent difficulty, which can *only* be removed by the aid of the *Statute of* 43 *Elizabeth,* and the application of the equitable doctrine of *Cy Pres;* neither of which is in force in Maryland.

In *Dashiell vs. The Attorney General,* 5 *H. & J.,* 392, the devise was "to the poor children belonging to the congregation of St. Peter's Protestant Episcopal Church, in the city of Baltimore." The court say, (page 399,) "without the aid of the statute the *cestui que trust* can only be brought into being by the ascertainment and designation of the trustee; and there being no such ascertainment and designation, though certain *selections* have been made, no persons exist having in themselves a vested equitable interest which they are capable of asserting in a court of equity. The bequest is therefore too vague and indefinite, &c., &c., and is void, and the subject of the trust, being undisposed of, the benefit of it results to the next of kin."

In *Trippe vs. Frazier & Wife,* 4 *H. & J.,* 446, the bequest was "*to the real distressed private poor of Talbot county;*" and was held to be void, owing "to the impracticability of correctly ascertaining the objects of the bequest."

2nd. A still further insurmountable objection to this devise, even if it were free from the objection last urged, is, that it is a perpetuity, created for the benefit of the poor persons who should, *from time to time,* reside within the limits, &c., of the twelfth ward. Even if, at the time the devise took effect, the *cestui que trusts* were sufficiently capable in equity of being ascertained and designated, "The poor, &c., &c., of the

70    v. 8

*twelfth ward*" are not a body corporate capable of taking in succession the annual income *forever* devised to them by the testator. In *Dashiell vs. Attorney General,* 6 *H. & J.,* 1, the devise was "to the trustees of Hillsborough school, to be by them applied towards feeding, clothing and educating the poor children of Caroline county, which attend the poor or charity school at Hillsborough." The court say, (page 8,) "the interposition of trustees does not make the bequest good, &c. The fund is a perpetual fund, intended, not only for the poor children who, at the death of the testator, attended Hillsborough school, but for such as should in succession attend that school, &c. *The poor children of Caroline county which attend Hillsborough school* are not a body corporate and cannot take in succession; and the bequest, if otherwise good, must fall as soon as the first objects of the testator's beneficence ceased to attend the school."

It seems obvious, that whatever new lights may recently have been thrown upon the extent and character of the jurisdiction in chancery over charitable uses prior to the Statute of Elizabeth, the present case cannot be brought within the saving benefits of that jurisdiction, except as amplified and extended by the statute.

3rd. Neither is it aided by the act of Assembly of 1842, ch. 86. This act was passed by reason of the admitted incompetency of the city, as trustee, to take the devise in question. As a body corporate, chartered for specific limited purposes, it could not be seized of a trust foreign to the ends of its charter. It is only by virtue of the provisions of the statute of Elizabeth that a corporation can hold in trust for charitable uses, when its charter confers no such power. The statute not being in force in Maryland the principle remains as at common law. 2 *Bac. Abr., title Corporations,* 2. The title of the act of 1842 sufficiently indicates the legislative interpretation of this question. It professes to confer *additional* powers upon the Mayor and City Council of Baltimore. Looking then at this act in its true purview, it can only be construed as conferring on the city corporation the power to receive and hold in trust, and to control for the purposes of such trust all prop-

erty bestowed for *valid* corporate, educational and charitable uses. In other words it only enables the city to act as trustee in all cases where, without the act, equity would support the bequest by the appointment of competent trustees to execute it. If this be not so, why was it necessary to provide for the case of gifts for any of their *corporate* purposes? But the act does not profess to give validity to such charities, as the courts of equity in the State would, on general principles refuse to set up, by reason of their vagueness and uncertainty, their creation of perpetuities, their repugnance to State or public policy, or otherwise. It can hardly be said that this act was intended, *quoad* the city of Baltimore, to re-enact the provisions of the *Statute of 43 Elizabeth;* and to confine the benefits, if such they be, of that statute, to cases arising within the city limits. And unless some such construction be put upon its language, it cannot be taken to cure the inherent defects in the devise now in question.

But even if it could be construed to give validity to such devises for the future, it is clear it cannot do so *retrospectively*. If, without the act, the devise could not take effect, the subject matter of the trust vested, at the death of the testator, in his residuary devisees. Their rights thus acquired could not be divested by any subsequent legislative act. "No State government can be presumed to possess the transcendental sovereignty to take away vested rights of property." *Story's Com. on the Const., sec.* 712.

No counsel appeared for the appellees.

MASON, J., delivered the opinion of this court.

The question presented upon this appeal is whether the following devise can be supported? It is to the city of Baltimore in trust for "the relief and support of the indigent and necessitous poor persons, who may, from time to time, reside within the limits, as now known, of the twelfth ward of said city of Baltimore."

Since the decisions of this court in the cases of *Trippe vs. Frazier, 4 Harr. & Johns.,* 446; and *Dashiell vs. Attorney General, 5 H. & J.,* 392; and *Same vs. Same,* 6 *H. & J.,* 1;

the validity of the devise now before us can hardly be regarded as an open question. It is too vague and indefinite, and too difficult of being correctly ascertained, to be enforced; and is therefore void, and in all such cases the subject of the trust must vest in the next of kin of the testator, or his residuary devisees.

In the present instance the testator died, and the will took effect in the year 1838. The rights of the residuary devisees thereby became immediately vested, and it was not in the power of the Legislature, by giving the act of 1842, chap. 86, such a retrospective operation, so as to divest the vested rights acquired under the will. See the case recently decided by *Judge Giles* in the Circuit Court of Maryland reported in *Volume 4th, page 526, American Law Register*, and also to the *Opinion of Chief Justice Taney*, therein referred to.

We reverse the *pro forma* judgment, entered in the court below, and direct judgment to be entered for the appellant.

*Judgment reversed,*
*but no procedendo.*