# CIRCUIT COURT OF BALTIMORE CITY.

Filed April 14, 1906.

CLARA V. TYLER ET AL.,
EXECUTORS,
VS.
IDA E. F. TYLER ET AL.

*J. Edward Tyler, Jr.,* for plaintiffs.

*Edward H. Hammond, Roger T. Gill, Albert S. J. Owens, Alfred Bagby, Jr., Wm. W. Varney, Alfred J. Shriver* and *Robert H. Smith* for defendants.

STOCKBRIDGE, J.—

The present proceeding is for the construction of certain provisions in the will of the late Charles Tyler, to be found in the tenth paragraph of said will. It reads as follows:

"10. I direct that the following legacies shall be paid by my executors or the survivor of them out of the rest, and residue of my estate and property, as, and when it shall be convenient to my executors, or the survivor of them to do so, viz:

I give and bequeath to the Baptist Missionary Union, Headquarters at Boston, Mass., the sum of five thousand dollars.

Unto the American Baptist Publication Society of Philadelphia, the sum of five thousand dollars.

Unto the Salvation Army of New York the sum of one thousand dollars, and unto Miss Claudia White, of California, to be used in her missionary work, the sum of one thousand dollars, and one thousand dollars per year for each of four succeeding years for the same work, if my executors or the survivor of them shall approve her work. And I give and bequeath unto the Rev. A. E. Bradenbaugh, to be used and appropriated by him to the uses and purposes of the Helping Up Mission now being conducted by him, $500."

And the construction of the Court is also asked with regard to the following provision contained in the second paragraph of the will:

"Unto my sister Sarah Tyler, Mrs. Rosa Burnham and Mrs. Roff, trustees, the sum of five hundred dollars to be applied in their discretion to the relief of the poor people of the Seventh Baptist Church of Baltimore, in five equal annual instalments of one hundred dollars each * * * and I direct that the said legacy be paid out of the amount realized out of my life insurance policies."

With regard to this last quoted legacy two questions have been raised, first, whether it is specific or demonstrative, and second, whether or not it is void for indefiniteness.

The bequest appears to me as void for indefiniteness and to come directly within the rule as laid down in Dashiell vs. The Atty. General, 5 H. & J., 392; Wilderman vs. Mayor and City Council of Balto., 8 Md., 551; Needles vs. Martin, 33 Md., 618; Church Extension Socy. vs. Smith, 56 Md. 367; Dulaney vs. Middleton, 72 Md. 67.

It is, therefore, not necessary to pass upon the question whether this

bequest is specific or demonstrative, as the legacy must be set aside.

The question presented by the bequest to the Baptist Missionary Union is one of misnomer, but under the evidence as given in this case and the rule as laid down in the cases of Trinity Church vs. Baker, 91 Md., 575, and Woman's F. M. Soc. vs. Mitchell, 93 Md., 199, this legacy must be sustained.

The bequest to the American Baptist Pubn. Soc. is called in question because of the fact that the will of the testator was executed less than thirty days before his death, and charitable legacies executed at such a time are void by the Pennsylvania statute. But the Pennsylvania restrictions upon the power of a testator can only be applicable to its own citizens, there is no such inhibition in Maryland, and it is not even contended that the Courts of Pennsylvania would apply their own statute to the construction of a will of a citizen of the State of Maryland so as to invalidate a legacy given by him, and which would be perfectly valid under our laws. The rule for Maryland in such cases has been laid down in the case In re. Stickney's Will, 85 Md., 79, and this legacy will be sustained.

The bequest of $500, to Mr. Bradenbaugh for the uses of the "Helping-Up Mission," is the case of a legacy to an individual for the benefit of a corporation duly created and existing under the laws of this State, and therefore there is a cestui que trust fully capable of enforcing the trust created. It was suggested in opposition to it, that there was no evidence to show any prior or subsequent sanction of the legislature to the bequest. But the purposes of the corporation as set out in the certificate of incorporation are very different from what the restriction of Article 38 of the Declaration of Rights was aimed at.

It is true that the avowed purpose of the corporation is humanitarian, and all humanitarian work is religious, in the sense at least that it is not repugnant to religion. But all humanitarian work is not religious in the meaning of that language as used in the Constitution. Thus a corporation might be formed for the maintenance of a hospital or the training of nurses, both of which objects would be essentially to humanitarian, but they would be very far from coming within the intent and meaning of the 38th Article of the Declaration of Rights, as to the necessity of legislative sanction for the validity of a bequest to them. The legacy to Mr. Bradenbaugh will therefore be held valid.

The only question raised with regard to the legacy to the Salvation Army was as to its incorporation, and the exhibit filed shows that legatee to have been duly incorporated the legacy to it will be declared to be valid.

Concerning the legacy to Miss Claudia White, it is conceded that inasmuch as the executors have disapproved, it can only be claimed as a legacy to the extent of $1,000; while with regard to it as a legacy for $1,000, two questions are presented; was, or not the approval of the executors requisite as to this, as well as to the successive yearly payments provided for, and if not, is not the whole bequest void for uncertainty? It was argued in behalf of this legacy that the language of the testator was to be construed not as creating a trust, but as imposing a condition subsequent. It does not. so seem to the Court. It presents rather the case where the distinction has to be drawn between the uncertainty of the bequest and the uncertainty of the object.

This distinction is fully discussed in the case of Pratt vs. The Sheppard Hospital, 88 Md., 628, and following what I understand the rule as laid down in that case, I must construe this as an instance of uncertainty in the object, and that no trust was intended.

Upon the other proposition no authority was cited in the argument, nor has the Court in the time it has been able to give to this case, been able to find any as to whether a legacy in the form of that here presented, was to be regarded as an entire or severable one. If entire, it must manifestly fail; if severable, it will be good to the extent of $1,000. The will itself will only be looked to. When the language of it is taken in connection with the circumstances under which it was made, by which is meant the personal knowledge of the testator as to the work in which Miss White was engaged, the condition of health of the testator at the time when the will was executed, and his speedy death thereafter, it would seem manifest that he had a present intention of giving to her the sum of $1,000, but that recognizing the uncertainty

of human affairs, that Miss White might not continue in the work she had been carrying on, and in which he was disposed to give his aid, or that if she did continue it, changed conditions might materially alter its character, he was, therefore, disposed as to any further benefaction in that direction to entrust it to the discretion of his executors. Such appears to me to have been the intent of the testator, and I shall accordingly hold this legacy valid to the extent of $1,000, and no more.

There remains only the question as to the extent to which the several legacies thus held valid are entitled to interest. The well known rule of law is that a legacy bears interest from the time when same is payable. By the terms of Mr. Tyler's will, he expressly enjoined his executors not to make a forced sale of his property for the purpose of paying the bequests he had made because of the nature of his estate.

The first administration account of the executors disclosed a cash balance in their hands of $5,390.54, or an amount insufficient to have paid all of the legacies. The second account was passed on the 24th day of July, 1905, from which it appears that the executors were at that time in funds sufficient to discharge the legacies, and interest will accordingly be allowed from that date.